IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------x
In re:

Delta Funding Corporation,[1]

        Debtor.

----------------------------------------------------------x

Chapter 11

Case No. 07-11881 (CSS)
(Jointly Administered)

Response Deadline: November 30, 2011 @ 4:00 p.m. (ET)
Hearing Date: December 7, 2011 @ 10:30 a.m. (ET)

## LIQUIDATING TRUSTEE'S OBJECTION TO CLAIMS
## FILED BY CONNECTICUT GENERAL LIFE INSURANCE COMPANY

    Hobart G. Truesdell (the "Trustee"), as the Trustee of the Liquidating Trust of the above-captioned, post-confirmation debtors (the "Debtors"), by this objection (the "Objection"), respectfully seeks entry of an order (the "Proposed Order") disallowing and expunging Claim No. 198, Claim No. 199, and Claim No. 487 (collectively, the "Disallowed Connecticut General Claims"), and reducing Claim No. 488 (the "Allowed Connecticut General Claim"; together with the Disallowed Connecticut General Claims, the "Connecticut General Claims"), filed by Connecticut General Life Insurance Company ("Connecticut General"). In support of this Objection, the Trustee respectfully states as follows:

### JURISDICTION AND VENUE

    1.    This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' chapter 11 cases and this Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b).

---

[1]     The chapter 11 case of Delta Funding Corporation ("Delta Funding") remains open. The chapter 11 cases of the three affiliate debtors, Delta Financial Corporation ("Delta Financial"); Renaissance Mortgage Acceptance Corp. and Renaissance REIT Investment Corp, were closed by final decree.

1

2.  The statutory predicates for the relief requested herein are section 502 of title 11 of the United States Code (11 U.S.C. §§ 101, *et seq.*, as amended, the "<u>Bankruptcy Code</u>"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 3007-1 of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

## BACKGROUND

3.  On December 17, 2007 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.  On March 19, 2008, the Court entered an order [D.I. 249] (the "<u>Bar Date Order</u>") that, among other things, established May 5, 2008 (the "<u>General Bar Date</u>"), as the last date for creditors to file and serve proofs of claim. Notice of the General Bar Date was provided by mail and publication in accordance with the procedures outlined in the Bar Date Order.

5.  On December 12, 2008, the Court entered an Order Confirming Joint Plan of Liquidation [D.I. 701] (the "<u>Confirmation Order</u>").

6.  On January 5, 2009 (the "<u>Effective Date</u>"), the Second Amended Joint Chapter 11 Plan of Liquidation by the Debtors and the Official Committee of Unsecured Creditors dated as of December 8, 2008 [D.I. 606] (as supplemented, modified, or amended, the "<u>Plan</u>") became effective. Pursuant to the terms of the Plan, on the Effective Date, the Liquidating Trust Agreement and Declaration of Trust (the "<u>Trust Agreement</u>") was executed, thereby creating the Delta Financial Liquidating Trust (the "<u>Trust</u>") and appointing Hobart G. Truesdell as Trustee. On the Effective Date, among other things, all Assets of the Debtors were transferred to the Trust.

7.  Pursuant to Article 8 of the Plan and section 4.05 of the Trust Agreement, the Trust reserved the right to object to the allowance of any claim, and the Trustee was given the authority and power to file objections regarding the allowance and disallowance of claims.

**RELIEF REQUESTED**

8.  By this Objection, the Trustee objects to the Connecticut General Claims and, for the reasons described below, and as more fully explained on Exhibit "A" attached hereto, seeks entry of the Proposed Order disallowing and expunging the Disallowed Connecticut General Claims, and reducing the Allowed Connecticut General Claim.

**A.   Amended and Superseded Claims**

9.  Connecticut General filed Claim No. 198 against Delta Financial, pursuant to which Connecticut General seeks payment in the total amount of $2,960,698.78 based on amounts allegedly due under a Group Health Insurance Policy, Cash Management Program ("CMP") Rider (the "CMP Rider"), and Supplemental Premium Agreement (the "Supplemental Premium") (together with all supplements, amendments and riders, the "Healthcare Agreements"). The Trustee has reviewed the proofs of claim and claims register in these cases and has determined that Claim No. 198 has been amended and superseded by Claim No. 487 filed by Connecticut General. Consequently, Claim No. 198 should be disallowed and expunged in its entirety.

10.  Connecticut General filed Claim No. 199 against Delta Funding, pursuant to which Connecticut General seeks payment in the total amount of $2,960,698.78 based on amounts allegedly due under the Healthcare Agreements. The Trustee has reviewed the proofs of claim and claims register in these cases and has determined that Claim No. 199 has been amended and superseded by Claim No. 488 (together with Claim No. 487, the "Remaining

Claims") filed by Connecticut General. Consequently, Claim No. 199 should be disallowed and expunged in its entirety.

11. Connecticut General will not be prejudiced by having the Amended and Superseded Claims disallowed and expunged because the Remaining Claims will remain on the claims register after the corresponding Amended and Superseded Claims are expunged. Therefore, the Trustee hereby (a) objects to the Amended and Superseded Claims and (b) seeks entry of the Proposed Order entirely disallowing and expunging the Amended and Superseded Claims, subject to the Debtors' further objections on any other grounds to the Remaining Claims.

**B.     No Liability Claim**

12. Connecticut General filed Claim No. 487 (the "No Liability Claim") against Delta Financial, pursuant to which Connecticut General seeks payment in the total amount of $2,772,709.78 based on amounts allegedly due under the Healthcare Agreements.

13. The Trustee objects to the No Liability Claim because the Trustee has reviewed Delta Financial's books and records for evidence of any amounts owing to Connecticut General on account of the No Liability Claim and has found no record of any such amounts owed by Delta Financial on account of the No Liability Claim.

14. The No Liability Claim was filed based on amounts allegedly due under the Healthcare Agreements. However, Delta Financial was not a party to the Healthcare Agreements. Indeed, the Debtors' books and records indicate that no such liability is owed.[2] Consequently, the No Liability Claim should be disallowed and expunged in its entirety because Connecticut General does not assert any cognizable theory upon which Delta Financial is liable pursuant to the Healthcare Agreements.

---

[2]     In any event, there is no anticipated distribution to creditors of Delta Financial.

#15140635 v1

**C.      The Reduced Claim**

15.     Connecticut General filed Claim No. 488 (the "Reduced Claim") against Delta Funding, pursuant to which Connecticut General seeks payment in the total amount of $2,772,709.78 based on amounts allegedly due under the Healthcare Agreements. The Reduced Claim is comprised of two components: (1) an administrative claim (the "Administrative Claim") in the amount of $41,289.12; and (2) a prepetition priority claim (the "Priority Claim") in the amount of $2,731,420.66 consisting of the following alleged liabilities: (i) $265,112.66 on account of CMP Bank Account underfunding, (ii) $516,115.00 on account of a bank margin call, and (iii) $1,950,193.00 on account of damages arising out of a Supplemental Premium.

**1.      *The Administrative Claim Should Be Disallowed***

16.     The Trustee objects to the Administrative Claim because the Trustee has reviewed Delta Funding's books and records for evidence of any amounts owing to Connecticut General on account of the Administrative Claim and has found no record of any amounts owed by Delta Funding on account of the Administrative Claim.

17.     The Administrative Claim was filed based on amounts allegedly due as unpaid post-petition premiums. However, the Trustee has conducted a reconciliation of the post-petition transactions between Delta Funding and Connecticut General and has determined that no amount is owed to Connecticut General on account of any post-petition premiums. Despite repeated requests, Connecticut General has failed to provide any support for its claim that there are any amounts owed on account of unpaid post-petition premiums. The Trustee has determined that all post-petition premium payments due and owing were tendered to Connecticut General. In fact, according to the Trustee's reconciliation, Delta Funding overpaid post-petition premiums in the amount of $7,775.59 (the "Overpaid Premiums"). The Trustee has completed a comprehensive

analysis of the payments to Connecticut General on account of the post-petition premiums and has shared this analysis with Connecticut General. However, Connecticut General refuses to adjust its records to reflect the post-petition premium payments and has yet to provide any documentation to support the existence of any outstanding post-petition premiums. In fact, in an attempt to resolve the Administrative Claim consensually, the Trustee has repeatedly requested a reconciliation from Connecticut General of the alleged outstanding post-petition liabilities. Despite the Trustee's numerous attempts to obtain information this information, Connecticut General has failed to provide any supporting documentation to support its Administrative Claim. Consequently, the Administrative Claim should be disallowed because Delta Funding does not owe Connecticut General any amounts on account of any post-petition premiums, and Connecticut General has provided insufficient documentation to support the Administrative Claim.

    **2.**    **The Priority Claim Should Be Reduced**

18.    The Trustee objects to the Priority Claim because the Trustee has reviewed Delta Funding's books and records and has determined that only a portion of the Priority Claim is entitled to priority status under Bankruptcy Code section 507(a). Therefore, the Priority Claim should be reduced.

    *a.*    *The CMP Bank Account Underfunding Priority Claim*

19.    Connecticut General asserts a Priority Claim on account of pre-petition CMP bank account (the "CMP Bank Account") underfunding in the amount of $265,112.66. The Trustee objects to the Priority Claim on account of pre-petition CMP Bank Account underfunding because the Trustee's books and records do not reflect any amounts due on account of such underfunding and, even if such underfunding existed, it would have accrued more than

180 days prior to the filing of the petition and, therefore, would only be entitled to treatment as a general unsecured claim.

20.     Under section 507(a)(5) of the Bankruptcy Code, a fifth priority is granted to "allowed unsecured claims for contributions to an employee benefit plan arising from services rendered within 180 days before the date of the filing of the petition or the date of cessation of the debtor's business, whichever comes first." 11 U.S.C. § 507(a)(5). Courts have held that an insurer is entitled to a priority claim for unpaid insurance premiums and administrative fees which accrue during the 180 days prior to the filing of the petition. See e.g., In re Saco Local Dev. Corp., 711 F.2d 441, 449 (1st Cir. 1983); In re Montaldo Corp., 232 B.R. 853 (M.D.N.C. 1997); In re Build Tech Systems, Inc., 339 B.R. 328 (Bankr. D. Vt. 2006). However, claims of a medical insurance company for services rendered more than 180 days prior to the filing of the petition are not entitled to priority under section 507(a)(5) of the Bankruptcy Code. See In re Cirruscorp, 196 B.R. 76 (S.D. Tex. 1996).

21.     The Trustee has analyzed the CMP Bank Account activity and, based on the documentation provided by Connecticut General, has been unable to determine that any amounts are due and owing resulting from the alleged CMP Bank Account underfunding. The Trustee has repeatedly requested specific documentation from Connecticut General to support the existence of a claim due to the alleged CMP Bank Account underfunding. Connecticut General, however, has failed to provide documentation supporting its claim. Therefore, the Trustee respectfully submits that the portion of the Priority Claim based on the CMP Bank Account underfunding should be disallowed and expunged. Furthermore, even if Connecticut General demonstrated the existence of a liability associated with the CMP Bank Account underfunding, such liabilities would be entitled to treatment as a general unsecured claim only. The Trust's

books and records reflect that the CMP Bank Account was fully funded during the 180 days prior to the Petition Date. Therefore, any alleged underfunding of the CMP Bank Account would have occurred, if at all, more than 180 days prior to the Petition Date. Under section 507(a)(5) of the Bankruptcy Code, a claim for contributions to an employee benefit plan is entitled to priority only to the extent that such contributions were rendered within 180 days before the date of filing of the petition. See 11 U.S.C. § 507(a)(5). While the Trust disputes that any amounts are due and owing in relation to the CMP Bank Account, the Trust's books and records reflect that Delta Funding would not owe any amounts on account of pre-petition CMP Bank Account underfunding that are entitled to priority under Bankruptcy Code section 507(a)(5), and therefore, Connecticut General would be entitled at best to a general unsecured, non-priority claim.

       b.   *The Bank Margin Call Priority Claim*

  22.  Connecticut General also asserts a Priority Claim on account of a Bank Margin Call in the amount of $516,115.00. The Trustee objects to the Priority Claim on account of the Bank Margin Call to the extent such claim exceeds $443,118.46.

  23.  The Trustee has reviewed Delta Funding's books and records and acknowledges that Connecticut General is entitled to a priority claim on account of the Bank Margin Call in the amount of $443,118.46 (the "Allowed Priority Claim") for claims incurred but not paid during the 180-day period prior to the filing of the petition. However, the Trustee asserts that the Allowed Priority Claim should be reduced by the Overpaid Premiums in the total amount of $7,775.59, which are due and owing to Delta Funding, for a total allowed priority claim of $435,342.86 (the "Total Allowed Priority Claim").

      *c.*      *The Supplemental Premium Priority Claim*

24. Connecticut General also asserts a Priority Claim on account of the Supplemental Premium in the amount of $1,950,193.00. The Trustee objects to the Priority Claim on account of the Supplemental Premium because (i) the Supplemental Premium is not owed, and (ii) even if it is owed, the Supplemental Premium is equivalent to a penalty payment or an unreasonable liquidated damages provision, which should be disallowed and expunged in its entirety.

25. Under the terms of the Healthcare Agreements, Delta Funding's monthly premium payments were lowered by only including Connecticut General's estimate of claims that would be presented for payment each month. The monthly premiums did not include an amount for estimated "run-out" claims and other costs, and instead, Delta Funding retained the funds in the form of a "Supplemental Premium." The Supplemental Premium became payable upon termination of the CMP Rider. According to the Healthcare Agreements, the Supplemental Premium is used by Connecticut General for purposes including the funding of incurred but unreported claims, the expenses of administering such claims, premium taxes, risk charges, and the recovery of deficits (collectively, the "<u>Run-out Claims and Related Expenses</u>"), which would normally accrue during the life of the CMP Rider (the "<u>Rider Period</u>").

26. While an insurer typically is entitled to a priority claim for unpaid insurance premiums and administrative fees that accrue during the 180-days prior to the filing of the petition,[3] the Supplemental Premium is not a typical insurance policy. Rather, the Supplemental Premium represents a lump sum penalty payment that became due and owing upon termination of the CMP Rider. To the extent the Supplemental Premium was designed to account for future

---

[3] Under Bankruptcy Code section 507(a)(5), premiums owed by a debtor-employer to an insurer providing health insurance coverage constitute contributions to an employee benefit plan and generally are entitled to priority treatment if such claims arise during the 180-days prior to the filing of the petition. See 11 U.S.C. § 507(a)(5); see also In re Saco Local Dev. Corp., 711 F.2d 441, 449 (1st Cir. 1983).

payments on Run-out Claims and Related Expenses, the Trustee acknowledges that Connecticut General is entitled to recover monies owed on account of such Run-out Claims and Related Expenses and, therefore, proposes allowing the Total Allowed Priority Claim.

27.     The Trustee submits that the Total Allowed Priority Claim satisfies the total amounts due and owing to Connecticut General on account of the expenses actually incurred by Connecticut General in connection with the Healthcare Agreements.  The Supplemental Premium, therefore, operates as an inequitable penalty provision for termination of the CMP Rider that disproportionately compensates Connecticut General for costs that were not actually incurred by Connecticut General in connection with the Healthcare Agreements.  See In re Graboyes, 371 B.R. 113, 123 (Bankr. E.D. Pa. 2007) ("It is well-established that a contractual provision that assesses a charge that is disproportionate to the injury that actually occurred will be treated as an unenforceable penalty provision."); see also In re White, 188 B.R. 498 (Bankr. D. Mass.) (noting increase in default interest rate was an unenforceable penalty because it was not a reasonable estimate of the creditor's actual damages).  Consequently, the Supplemental Premium is tantamount to a penalty provision and would result in an inequitable and improper double recovery for Connecticut General.  See Bollinger v. Rheem Mfg. Co., 381 F.2d 182, 185 (10th Cir. 1987).  Therefore, the Supplemental Premium should be disallowed and expunged in its entirety because the Total Allowed Priority Claim and the post-petition premium payments made by Delta Funding adequately compensate Connecticut General for its all of its out-of-pocket expenses associated with the Healthcare Agreements, and the Supplemental Premium is not otherwise owed.

#15140635 v1

## RESERVATION OF RIGHTS

28. The Trustee hereby reserves the right to object in the future to any of the proofs of claim listed in this Objection on any ground, and to amend, modify, and/or supplement this Objection, including, without limitation, to object to amended or newly-filed claims.

29. Notwithstanding anything contained in this Objection, nothing herein shall be construed as a waiver of any rights that the Trustee may have: (a) to bring avoidance actions under the applicable sections of the Bankruptcy Code against the holders of claims subject to the Objection; or (b) to exercise rights of setoff against the holders of such claims relating to such avoidance actions.

## COMPLIANCE WITH LOCAL RULE 3007-1

30. To the best of the Trustee's undersigned counsel's knowledge and belief, this Objection complies with Local Rule 3007-1. To the extent that this Objection does not comply in all respects with the requirements of Local Rule 3007-1, the undersigned believes such deviations are not material and respectfully requests that any such requirement be waived.

31. Local Rule 3007-1(a) provides that an omnibus objection is "an objection to claims asserted by more than one claimant." Local Rule 3007 governs to the extent there is any inconsistency with Bankruptcy Rule 3007 regarding omnibus objections. *See* Local Rule 3007(1)(a). Accordingly, this Objection is not an omnibus objection.

## **CONCLUSION**

WHEREFORE the Trustee respectfully requests the entry of an order, substantially in the form attached hereto, disallowing and expunging Claim No. 198, Claim No. 199, and Claim No. 487, and reducing Claim No. 488 filed by Connecticut General as set forth on Exhibit "A" attached hereto and granting such other and further relief as the Court deems just and proper.

Dated: November 7, 2011  
       Wilmington, Delaware

Respectfully submitted,

/s/ John H. Schanne, II  
David B. Stratton (DE No. 960).  
John H. Schanne, II (DE No. 5260)  
PEPPER HAMILTON LLP  
Hercules Plaza, Suite 5100  
1313 N. Market Street, P.O. Box 1709  
Wilmington, DE 19899-1709  
Telephone:  (302) 777-6500  
Facsimile:  (302 421-8390  

- and –

HAHN & HESSEN LLP  
488 Madison Avenue, 15th Floor  
New York, New York 10022  
Telephone:  (212) 478-7200  
Facsimile:  (212) 478-7400  
Attention:  Mark T. Power, Esq.  
              Christopher J. Hunker, Esq.

*Co-Counsel to the Liquidating Trust of the Debtor*

#15140635 v1